**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **NAMELY, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION FILE NO.** |
| ) | _____ |
| **PEOPLE CENTER, INC. d/b/a** ) | |
| **RIPPLING; RIPPLING PEO 1, INC;** ) | |
| **RIPPLING PEO 2, INC.; RIPPLING** ) | |
| **PEO 3, INC; JESER QUINONES;** ) | |
| **DOUGLAS CHIKI; MISCHELLE** ) | |
| **PARK; SAMUEL ROTHMAN; KYLEE** ) | |
| **REEVES; THEORDORE WERNER;** ) | |
| **SHIVANI DESAI; MADISON** ) | |
| **ROBERTSON; and BRITTANY** ) | |
| **JACOBS,** ) | |
| ) | |
| **Defendants.** ) | |

## COMPLAINT

COMES NOW, Namely, Inc. ("Namely"), the Plaintiff herein and files this

Complaint against Defendants.[1]   Namely shows this Honorable Court as follows:

## INTRODUCTION

For more than one year and continuing to the present, Defendant People

Center, Inc. d/b/a Rippling ("Rippling") and its Georgia subsidiaries (Defendant

_____

[1]  Throughout this pleading, the term "Defendants" shall be used to refer to all of the
named Defendants collectively.

Rippling PEO 1, Inc., Defendant Rippling PEO 2, Inc. and Defendant Rippling PEO 3, Inc.) (collectively referred to herein as "the Rippling Defendants") have engaged in a malicious and relentless campaign to induce at least 14 Namely employees to breach their covenants not to compete by accepting employment with the Rippling Defendants, including at least one such employee within the past three weeks. Namely brings this action for breach of contract and tortious interference with contractual relations to seek redress for Defendants' unlawful conduct.

## THE PARTIES

1.

Namely is incorporated under the laws of the state of Delaware with its principal place of business in New York.   Namely is authorized to do business in Georgia.

2.

Rippling is incorporated under the laws of the state of Delaware with its principal place of business in California.   Rippling may be served with process through its registered agent, Corporation Service Company and an authorized employee thereof, located at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833.

3.

Defendant Rippling PEO 1, Inc. is incorporated under the laws of the state of Florida with its principal place of business in California.  Defendant Rippling PEO, 1, Inc. does business in Georgia and may be served through its registered agent, Corporation Service Company, at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.   Upon information and belief, Defendant Rippling PEO 1, Inc. is a wholly-owned subsidiary of Rippling.

4.

Defendant Rippling PEO 2, Inc. is incorporated under the laws of the state of Florida with its principal place of business in California.  Defendant Rippling PEO, 2, Inc. does business in Georgia and may be served through its registered agent, Corporation Service Company, at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.  Upon information and belief, Defendant Rippling PEO 2, Inc. is a wholly-owned subsidiary of Rippling.

5.

Defendant Rippling PEO 3, Inc. is incorporated under the laws of the state of Florida with its principal place of business in California.  Defendant Rippling PEO, 3, Inc. does business in Georgia and may be served through its registered agent, Corporation Service Company, at 2 Sun Court, Suite 400, Peachtree Corners,

Georgia 30092.  Upon information and belief, Defendant Rippling PEO 3, Inc. is a wholly-owned subsidiary of Rippling.   Defendants Rippling PEO 1, Inc., Rippling PEO 2, Inc. and Rippling PEO 3, Inc. are collectively referred to herein as "the Rippling Subsidiaries."   Rippling and the Rippling Subsidiaries are collectively referred to herein as "the Rippling Defendants."

6.

Defendant Jeser Quinones ("Defendant Quinones") is a citizen of Georgia and may be served at his residence at 3423 Piedmont Road, NE, Atlanta, Georgia 30305.

7.

Defendant Douglas Chiki ("Defendant Chiki") is a citizen of Georgia and may be served at his residence at 624 Cityscape Plaza, NE, Atlanta, Georgia 30308.

8.

Defendant Mischelle Park ("Defendant Park") is a citizen of Georgia and may be served at her residence at 3131 North Druid Hills Road, Apt. 2301, Decatur, Georgia 30033.

9.

Defendant Samuel Rothman ("Defendant Rothman") is a citizen of Georgia and may be served at his residence at 1059 Merrivale Chase, Roswell, Georgia 30075.

10.

Defendant Kylee Reeves ("Defendant Reeves") is a citizen of Georgia and may be served at her residence at 807 Commerce Trail, Canton, Georgia 30114.

11.

Defendant Theodore Werner ("Defendant Werner") is a citizen of Georgia and may be served at his residence at 3415 Chesatee Road, Gainesville, Georgia 30506.

12.

Defendant Shivani Desai ("Defendant Desai") is a citizen of Georgia and may be served at his residence at 434 Pearl Street, Locust Grove, Georgia 30248.

13.

Defendant Madison Robertson ("Defendant Robertson") is a citizen of Georgia and may be served at his residence at 1888 Hollywood Road, NW, Apt. 3103, Atlanta, Georgia 30318.

14.

Defendant Brittney Jacobs ("Defendant Jacobs") is a citizen of Georgia and may be served at her residence at 5485 Fox Valley Lane, Stone Mountain, Georgia 30088.

15.

Defendants Quinones, Chiki, Park, Rothman, Reeves, Werner, Desai, Robertson and Jacobs are collectively referred to herein as "the Individual Defendants."

## JURISDICTION

16.

There is complete diversity of citizenship between Namely, who is a citizen of New York, and Defendants, who are citizens of Georgia or California, to support federal court jurisdiction.

17.

The amount in controversy exceeds $75,000.

18.

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

19.

Venue is proper in the Atlanta Division of the Northern District of Georgia because a substantial part of the events giving rise to Namely's claim occurred within the Atlanta Division of the Northern District of Georgia.   28. U.S.C. § 1391(b)(2). Alternatively, venue is proper in the Atlanta Division of the Northern District of

Georgia because many of the Defendants are subject to the Court's personal jurisdiction with respect to this action in the Atlanta Division of the Northern District of Georgia.

## FACTS

### A.    Nature of Namely's Business

20.

Namely is a human resources software company that has been operating since 2012. Namely is in the business of providing human resources software and services to small and mid-size employers. Among the services provided by Namely are payroll administration, employee benefits administration, employee and talent management, insurance brokerage, employee onboarding, recruiting and a myriad of other related services. Namely provides these services via a software platform and data management systems it has developed, as well as consultation services certain employees provide to Namely clients.

21.

Namely currently has one physical office located in New York, New York. Namely previously maintained an office in Atlanta, Georgia, located at 2002 Summit Boulevard, Suite 1500, the sublease for which terminated on December 31, 2020. Namely currently has approximately 278 employees. Currently, there are

approximately 75 Namely employees working in Georgia, primarily in the Atlanta area.  Namely provides human resources services to numerous small- and mid-size employers in Georgia.

**B.    Job Duties of Individual Defendants While Employed With Namely And Other Former Namely Employees**

22.

Defendant Robertson was a Client Response Team Lead with Namely and regularly supervised the work of approximately eight to ten employees.  Defendant Robertson had particular weight given to his suggestions and recommendations as to the hiring, firing, advancement, promotion, or other changes of status of other employees.  In this position, Defendant Robertson also was designated as the main point of contact for approximately 100 Namely clients regarding any strategic conversations, including but not limited to how clients can best utilize Namely's software and services, or escalated issues, such as enrollment of client employees in benefit plans.  The Namely clients for which Defendant Robertson was designated as the main point of contact generated approximately $6.7 million in annual recurring revenue ("ARR").

23.

Defendant Desai was an Operations Team Lead with Namely and regularly supervised the work of approximately eight to ten employees.   Defendant Desai

had particular weight given to her suggestions and recommendations as to the hiring, firing, advancement, promotion, or other changes of status of other employees. Defendant Desai had duties and responsibilities substantially similar to Defendant Robertson's duties and was a key client contact for approximately 400 Namely clients that generated approximately $5 million in ARR.

24.

Defendant Rothman was a Service Manager with Namely. Defendant Rothman regularly supervised approximately eight to ten employees and had the authority to hire or hire employees, or had particular weight given to his suggestions and recommendations as to the hiring, firing, advancement, promotion, or other changes of status of other employees. Defendant Rothman was a key client contact for approximately 400 Namely clients that generated $5 million in ARR, Defendant Rothman also played a role in negotiating renewal of contracts with clients and was compensated for client retention.

25.

Defendant Quinones was Vice President, Client Services with Namely. In this position, Defendant Quinones led Namely's Client Services function, developing and executing Namely's strategy for supporting clients and maintaining

primary responsibility for hiring, firing and talent development within the organization.

26.

Defendant Jacobs was a Managed Payroll Consultant with Namely.  In this position, Defendant Jacobs interfaced directly with Namely clients to assist with processing of those clients' payrolls.  In this position, Defendant Jacobs processed payroll for at least 25 large Namely clients that did not process their own payroll. Defendant Jacobs was the primary point of contact regarding payroll matters for these Namely clients, which generated approximately $2.1 million in ARR for Namely.

27.

Defendants Chiki, Park, Reeves and Werner were employed with Namely as Client Implementation Consultants.  In this position, these Defendants were responsible for implementing new clients into the human resources platform and services provided by Namely.  In performing this role, each of these Defendants would lead client implementation projects, identifying the specific needs of each client and using their specialized knowledge to configure the client's needs to the Namely platform accordingly so that the client could then utilize Namely's platform. Each of these Defendants would then transition the client to Namely's service team.

If a client is not successfully and timely implemented into the Namely platform, Namely cannot charge the client subscription fees and the client typically cancels its contract with Namely.

28.

Anastasia Falony ("Falony"), Kendra Burke ("Burke"), Nicole Dye ("Dye") and Tedros Woldagabriel ("Woldabagriel") are also former Namely employees who were Client Implementation Consultants for Namely and had the same job duties as those set forth in the preceding paragraph.

29.

Sara Baig ("Baig") was a Benefits Implementation Team Lead with Namely. In this position, Baig regularly supervised the work of approximately five employees. Baig had particular weight given to her suggestions and recommendations as to the hiring, firing, advancement, promotion or other changes of status of the employees. Baig had extensive contact with numerous Namely clients and played a critical role in ensuring that new Namely clients were properly integrated into Namely's platform with respect to benefits administration. If a client is not successfully and timely implemented into the Namely benefits administration platform, Namely cannot charge the client subscription fees for those services and the client typically cancels its contract with Namely.

30.

Falony, Burke, Dye, Woldagabriel and Baig are collectively referred to herein as "Other Former Namely Employees."

**C.     Namely's Restrictive Covenants With Individual Defendants And The Other Former Namely Employees**

31.

Each of the Individual Defendants signed a Namely Employee Proprietary Information and Inventions Agreement ("the Agreement").   True and correct copies of the Agreement signed by each of the individual Defendants are attached hereto as Exhibit "A."

32.

The Other Former Namely Employees also signed the Agreement.  True and correct copies of the Agreement signed by the Other Former Namely Employees are attached hereto as Exhibit "B."

33.

The Agreement signed by each of the Individual Defendants and the Other Former Namely Employees provides, in relevant part, as follows:

> Covenants Regarding Competition.  At all times during the term of Employee's employment with the Company and for a period of one (1) year immediately following the date on which Employee ceases rendering services in any capacity to the Company for any reason (the "Non-Compete Period"), Employee shall not – directly or indirectly,

and whether as a stockholder, venture, partner, member, proprietor, principal, employee, agent, consultant or otherwise – own a Competitive Entity in the Restricted Area, or engage in or be employed or retained by a Competitive Entity in the Restricted Area in any position or role that would involve services, or the supervision of services, that are similar in function or purpose to those Employee performed on behalf of the Company.

34.

The Agreement defines a "Competitive Entity" as "any individual person or entity which, directly or indirectly, conducts a business enterprise, activity or lines of business which competes with any enterprise, activity or line of business in which the Company or its affiliates engage or any services provided by the Company or its affiliates[.]"

35.

The Agreement defines "Restricted Area" as "the states in which Employee provided any services on behalf of the Company, or as to which Employee had access to Confidential Information regarding the Company's business during the last two years of Employee's employment with the Company, or such shorter time as Employee has been employed."

**D.**     **Nature of Rippling's Business**

36.

Rippling is a human resources software and services company that has been operating since at least 2016. The Rippling Subsidiaries are professional employment organizations that have been operating since at least 2019. Upon information and belief, Rippling currently has approximately 500 employees.

37.

The Rippling Defendants are in the business of providing human resources software and services to small and mid-size employers. Among the services provided by the Rippling Defendants are payroll administration, employee benefits administration, employee and talent management, compliance, employee onboarding, recruiting and a myriad of other human resources related services. The Rippling Defendants provide these services via software platforms and data management systems, as well as consultation services certain employees provide to their clients.

38.

The Rippling Defendants are direct competitors of Namely. The Rippling Defendants provide human resources services to numerous small and mid-size employers in Georgia.

**E.     The Rippling Defendants Initiate Campaign To Induce Individual Defendants And Other Former Namely Employees To Breach Their Agreements With Namely And Accept Employment With Rippling Defendants**

39.

Beginning in May 2020 and continuing to the present, the Rippling Defendants have embarked on a campaign to induce the Individual Defendants and the Other Former Namely Employees to breach their Agreement with Namely and to accept employment with the Rippling Defendants.

40.

Defendant Chiki signed the Agreement on April 27, 2018.  Defendant Chiki resigned from his employment with Namely, effective August 14, 2020 to accept employment with the Rippling Defendants in the Atlanta, Georgia metropolitan area. Since that time, as an employee of the Rippling Defendants, Defendant Chiki has been performing services that are similar in function or purpose to the services he performed for Namely.

41.

Defendant Park signed the Agreement on June 7, 2018.  Defendant Park resigned from her employment with Namely, effective November 6, 2020 to accept employment with the Rippling Defendants in the Atlanta, Georgia metropolitan area. Since that time, as an employee of the Rippling Defendants, Defendant Park has

15

been performing services that are similar in function or purpose to the services she performed for Namely.

42.

Baig signed the Agreement on September 28, 2017.  Baig resigned from her employment, effective November 13, 2020, to accept employment with the Rippling Defendants.  Since that time, as an employee of the Rippling Defendants, Baig has been performing services or supervising the provision of services that are similar in function or purpose to the services she performed for Namely.

43.

Defendant Rothman signed the Agreement on September 8, 2017.  Defendant Rothman resigned from his employment with Namely, effective February 26, 2021 to accept employment with the Rippling Defendants in the Atlanta, Georgia metropolitan area.  Since that time, as an employee of the Rippling Defendants, Defendant Rothman has been performing services or supervising the provision of services that are similar in function or purpose to the services he performed for Namely.

44.

Defendant Reeves signed the Agreement on March 26, 2019.  Defendant Reeves resigned from her employment with Namely, effective March 22, 2021 to

accept employment with the Rippling Defendants in the Atlanta, Georgia metropolitan area.  Since that time, as an employee of the Rippling Defendants, Defendant Reeves has been performing services that are similar in function or purpose to the services she performed for Namely.

45.

Defendant Werner signed the Agreement on March 16, 2020.  Defendant Werner resigned from his employment with Namely, effective April 7, 2021 to accept employment with the Rippling Defendants in the Atlanta, Georgia metropolitan area.  Since that time, as an employee of the Rippling Defendants, Defendant Werner has been performing services that are similar in function or purpose to the services he performed for Namely.

46.

Woldagabriel signed the Agreement on April 30, 2018.  Woldagabriel resigned from his employment with Namely, effective April 16, 2021 to accept employment with the Rippling Defendants in the Atlanta, Georgia metropolitan area. Since that time, as an employee of the Rippling Defendants, Woldagabriel has been performing services that are similar in function or purpose to the services he performed for Namely.

**F.      The Rippling Defendants Disregard Namely's Repeated Warnings To Cease And Desist Their Unlawful Conduct And Continue Their Campaign To Induce Individual Defendants To Breach Their Agreements With Namely And Accept Employment With The Rippling Defendants**

47.

On February 26, 2021, Namely, through its general counsel, sent correspondence to Rippling's general counsel concerning Rippling's hiring of Defendant Rothman.  Namely's 2/26/21 correspondence enclosed a copy of the Agreement as it pertains to Defendant Rothman.  A true and correct copy of this 2/26/21 correspondence is attached hereto as Exhibit "C."

48.

 Namely's 2/26/21 correspondence to Rippling's general counsel warned Rippling not to hire any of Mr. Rothman's co-workers or any Namely employees involved in its client services function.  Namely's 2/26/21 correspondence also warned that, if Rippling induced any former Namely employees to take any actions that violate their Agreement, Namely would take prompt and appropriate legal action, including but not limited to pursuing all remedies available for Rippling's tortious interference with Namely's contractual relations.  Namely's 2/26/21 correspondence also reserved Namely's right to enforce Mr. Rothman's non-compete obligations.

49.

Because Rippling did not respond to Namely's 2/26/21 correspondence, Namely, through its general counsel, followed up with an email to Rippling's general counsel on April 13, 2021. A true and correct copy of this 4/13/21 email is attached hereto as Exhibit "D."

50.

In this 4/13/21 email, Namely's general counsel noted that Rippling had hired three more Namely employees (Woldagabriel and Defendants Reeves and Werner) since his 2/26/21 correspondence. Namely's general counsel warned Rippling in his 4/13/21 email that Namely was strongly considering taking legal action and made it clear that Namely intended to enforce its rights.

51.

On April 16, 2021, Namely's outside counsel also wrote a letter to Rippling's outside counsel warning Rippling to cease and desist its unlawful conduct. A true and copy of this 4/16/21 correspondence is attached hereto as Exhibit "E."

52.

On April 22, 2021, Rippling's general counsel sent a response letter to Namely's general counsel and outside counsel asserting that the restrictive covenants contained in the Agreement, including the non-compete provisions, were invalid and

unenforceable, and that Rippling would continue to recruit Namely employees. A true and correct copy of Rippling's 4/22/21 correspondence to Namely is attached hereto as Exhibit "F."

53.

Consistent with Rippling's stated intentions as set forth in its 4/22/21 correspondence, the Rippling Defendants' unlawful conduct in inducing Namely employees to breach their Agreement and accept employment with the Rippling Defendants has continued unabated.

54.

Defendant Desai signed the Agreement on July 25, 2018. Defendant Desai resigned from his employment with Namely, effective May 5, 2021 to accept employment with the Rippling Defendants in the Atlanta, Georgia metropolitan area. Since that time, as an employee of the Rippling Defendants, Defendant Desai has been performing services or supervising the provision of services that are similar in function or purpose to the services he performed for Namely.

55.

Defendant Robertson signed the Agreement on April 27, 2018. Defendant Robertson resigned from his employment with Namely, effective May 5, 2021 to accept employment with the Rippling Defendants in the Atlanta, Georgia

metropolitan area.  Since that time, as an employee of the Rippling Defendants, Defendant Robertson has been performing services or supervising the provision of services that are similar in function or purpose to the services she performed for Namely.

56.

In June 2021, Rippling made an offer to another Namely employee working out of Namely's New York office, which offer was subsequently declined by that employee.

57.

Defendant Jacobs signed the Agreement on February 4, 2020.  Defendant Jacobs resigned from her employment with Namely, effective June 25, 2021, to accept employment with the Rippling Defendants in the Atlanta, Georgia metropolitan area.  The Rippling Defendants specifically offered Defendant Jacobs a $5,000 bonus to resign from Namely with no notice, which she did.  Since that time, as an employee of the Rippling Defendants, Defendant Reeves has been performing services that are similar in function or purpose to the services she performed for Namely.

### G.     Rippling Defendants Induce Additional Former Namely Employees To Breach The Agreement And Accept Employment With Rippling Defendants

58.

Falony signed the Agreement on April 3, 2019.  Falony was terminated from her employment with Namely, effective May 1, 2020.  Less than one year after her employment with Namely was terminated, Falony accepted employment with the Rippling Defendants in the Atlanta, Georgia metropolitan area.   Since that time, as an employee for the Rippling Defendants, Falony has been performing services that are similar in function or purpose to the services she performed for Namely.

59.

Burke signed the Agreement on August 20, 2018.  Burke was terminated from her employment with Namely, effective May 1, 2020.  Less than one year after her employment with Namely was terminated, Burke accepted employment with the Rippling Defendants in the Atlanta, Georgia metropolitan area.   Since that time, as an employee for the Rippling Defendants, Burke has been performing services that are similar in function or purpose to the services she performed for Namely.

60.

Dye signed the Agreement on July 9, 2018.  Dye was terminated from her employment with Namely, effective May 1, 2020. Less than one year after her

employment with Namely was terminated, Dye accepted employment with the Rippling Defendants in the Atlanta, Georgia metropolitan area. Since that time, as an employee of the Rippling Defendants, Dye has been performing services that are similar in function or purpose to the services she performed for Namely.

61.

Defendant Quinones signed the Agreement on October 19, 2017. Defendant Quinones was terminated from his employment with Namely, effective May 8, 2020. Less than one year after his employment with Namely was terminated, Defendant Quinones accepted employment with the Rippling Defendants in the Atlanta, Georgia metropolitan area. Since that time, as an employee of the Rippling Defendants, Defendant Quinones has been performing services or supervising the provision of services that are similar in function or purpose to the services he performed for Namely.

## CAUSES OF ACTION

## COUNT I – BREACH OF CONTRACT

### (Against all of the Individual Defendants)

62.

Namely incorporates by reference the allegations set forth in paragraph 1 through 61 of the Complaint as though set forth specifically herein.

23

63.

By signing the Agreement, each of the Individual Defendants agreed that, for a period of one year after the end of his or her employment with Namely, he or she would refrain from accepting employment in the Restricted Area with a Competitive Entity for a position involving services or the supervision of services that are similar in function or purpose to those he or she performed on behalf of Namely.

64.

The Covenants Regarding Competition set forth in the Agreement signed by each of the Individual Defendants are reasonable in time, geographic area and scope of prohibited competitive activities. The Individual Defendants performed for Namely the type of services for which non-competition agreements are authorized pursuant to the Georgia Restrictive Covenants Act. The Covenants Regarding Competition set forth in the Agreement therefore are valid and enforceable.

65.

The Rippling Defendants are direct competitors of Namely and thus are a Competitive Entity as defined by the Agreement signed by the Individual Defendants.

66.

Less than one year after ending their employment with Namely, the Individual Defendants accepted employment with the Rippling Defendants for positions involving services or the supervision of services that are similar in function or purposes to those they performed on behalf of Namely.  The Individual Defendants performed services for Namely in Georgia and are performing services for the Rippling Defendants in Georgia.

67.

The conduct of the Individual Defendants set forth above breached the terms of the Agreement they signed with Namely and in particular the Covenants Regarding Competition set forth in the Agreement.

68.

The Individual Defendants' breaches of the Agreement and the Covenants Regarding Competition set forth therein have caused substantial financial injury to Namely.  For example, due to the Individual Defendants' breaches of the Agreement and the Covenants Regarding Competition set forth therein, Namely has lost more than 40 clients, which resulted in the loss of more than $2.5 million in ARR for Namely.

## COUNT II – TORTIOUS INTERFERENCE

## WITH CONTRACTUAL RELATIONS

### (Against the Rippling Defendants)

69.

Namely incorporates by reference the allegations set forth in paragraph 1 through 68 of the Complaint as though set forth specifically herein.

70.

The Rippling Defendants knew that the Individual Defendants and the Other Former Namely Employees had restrictive covenants with Namely that prohibited them from accepting the positions of employment offered by the Rippling Defendants.   In spite of this knowledge, the Rippling Defendants induced the Individual Defendants and the Other Former Namely Employees to breach the Covenants Regarding Competition set forth in the Agreement and employ them in positions involving services or the supervision of services similar in purpose and function to the services they performed for Namely.

71.

By no later than April 13, 2021, the Rippling Defendants were aware that the Individual Defendants and the Other Former Namely Employees had signed the Agreement, including the Covenants Regarding Competition set forth therein and

had received a copy of the Agreement from Namely.   Despite this knowledge, the Rippling Defendants have continued to employ the Individual Defendants and the Other Former Namely Employees to the present and informed Namely that it would continue with impunity its campaign of inducing additional Namely employees to breach their Covenants Regarding Competition set forth in the Agreement by accepting employment with the Rippling Defendants.

72.

To this end, after April 13, 2021, the Rippling Defendants induced two additional Namely employees (Defendants Robertson and Desai) to breach their Covenants Regarding Competition set forth in the Agreement and accept positions with the Rippling Defendants involving services or the supervision of services similar in purpose and function to the services they performed for Namely.

73.

Furthermore,  in June 2021, Rippling unsuccessfully attempted to induce another Namely employee to breach his Covenants Regarding Competition set forth in the Agreement by accepting a position with Rippling involving services similar in purpose and function to the services he performed for Namely.

74.

More recently, Rippling induced Defendant Jacobs to breach her Covenants Regarding Competition set forth in the Agreement, resign from her position at Namely on June 25, 2021 and accept a position with the Rippling Defendants involving services similar in purpose and function to the services she performed for Namely.    Moreover, to make matters worse and further illustrating the Rippling Defendants' malicious intent, the Rippling Defendants offered Defendant Jacobs a $5,000 bonus if she resigned from her employment with Namely immediately without providing any prior notice to Namely, which Defendant Jacobs did.

75.

By taking the actions set forth above, the Rippling Defendants have tortiously interfered with Namely's contractual relations with the Individual Defendants and the Other Former Namely Employees.

76.

Since May 2020 and continuing to the present, the Rippling Defendants have been carrying out a carefully devised scheme to poach critical Namely employees and induce them to breach their Covenants Regarding Competition set forth in the Agreement and accept positions with the Rippling Defendants involving services or

the supervision of services similar in purpose and function to the services they performed for Namely.

77.

The Rippling Defendants took the improper actions set forth above maliciously, purposely and without privilege for the purpose of benefiting the Rippling Defendants at the expense of Namely.

78.

As a result of the Rippling Defendants' tortious interference with Namely's contractual relations with the Individual Defendants and the Other Former Namely Employees, the Rippling Defendants have caused substantial financial injury to Namely. For example, due to the Rippling Defendants' tortious interference with Namely's contractual relations with the Individual Defendants and the Other Former Namely Employees, Namely has lost more than 40 clients, which resulted in the loss of more than $2.5 million in ARR for Namely.

## COUNT III

## ATTORNEY'S FEES

### (Against all Defendants)

79.

Namely incorporates by reference the allegations set forth in paragraph 1 through 78 of the Complaint as though set forth specifically herein.

80.

By engaging in the actions set forth above, Defendants have acted in bad faith, been stubbornly litigious and have caused Namely unnecessary trouble and expense Accordingly, Namely is entitled to recover all costs of litigation, including reasonable attorneys' fees, pursuant to O.C.G.A.§ 13-6-11.

## COUNT IV

## PUNITIVE DAMAGES

### (Against the Rippling Defendants)

81.

Namely incorporates by reference the allegations set forth in paragraph 1 through 80 of the Complaint as though set forth specifically herein.

82.

The Rippling Defendants have acted with a callous disregard and a conscious indifference to the consequences of their actions and the rights of Namely under the Covenants Against Competition set forth in the Agreement signed by the Individual Defendants and the Other Former Namely Employees.   The Rippling Defendants knowingly ignored the Agreement and the Covenants Against Competition set forth therein and encouraged the Individual Defendants and the Other Former Namely Employees to breach the Covenants Against Competition set forth in the Agreement. The Rippling Defendants did so with deliberate intent to inflict injury on Namely.

83.

The conduct of the Rippling Defendants as set forth above authorize an award of punitive damages as contemplated by O.C.G.A. § 51-12-5.1 in an amount to be determined by the enlightened conscious of the jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Namely respectfully requests the following relief:

(a)     that Namely be awarded compensatory damages in an amount to be determined by a jury at trial;

(b)   that the Court enter a preliminary and/or permanent injunction enjoining the Rippling Defendants from hiring Namely employees in Georgia in violation of the Covenants Against Competition set forth in the Agreement;

(c)   that Namely be awarded punitive damages from the Rippling Defendants in an amount to be determined by the enlightened conscience of the jury to punish and deter the Rippling Defendants from repeating their unlawful conduct;

(d)   that Namely be awarded its reasonable attorney's fees and expenses; and

(e)   that the Court award any other relief to Namely that the Court deems necessary and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues and counts so triable.

This 12th day of July, 2021.

**FREEMAN MATHIS & GARY, LLP**

*/s/ Kenneth G. Menendez*
Kenneth G. Menendez
Georgia Bar No. 502045
kmenendez@fmglaw.com
William H. Buechner, Jr.
Georgia Bar No. 086392
bbuechner@fmglaw.com

Counsel for Plaintiff Namely, Inc.

100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339-5948
T:  (770) 818-0000
F:  (770) 937-9960