# EXHIBIT F

 **RIPPLING**

People Center, Inc. dba Rippling
55 2nd Street, Suite 1500
San Francisco, CA 94105

April 22, 2021

**VIA EMAIL TO** <u>PAUL.STEPHAN@NAMELY.COM</u> **AND** <u>LSTEWART@SWFLIP.COM</u>

**Namely**
195 Broadway Street
15th Floor
New York, NY 10007
Attention to: Paul Stephan, General Counsel

**Schreeder, Wheeler & Flint, LLP**
1100 Peachtree Street, NE
Suite 800
Atlanta, Georgia 30309-4516
Attention to: Lynn C. Stewart

Re:    April 13, 2021 Email from Paul Stephan and April 16, 2021 Letter from Lynn C. Stewart

Dear Mr. Stephan and Ms. Stewart:

In response to the various letters and correspondence from Namely to Rippling and our employees (*see* example attachments), I'd like to clear up a few things --

1.  We are grateful that the named former Namely employees (all copied here) have decided to join us in various customer implementation and customer support roles during this pandemic.

2.  We take the intellectual property rights of others very seriously, take appropriate precautions to ensure that Rippling competes on fair terms, and have no reason to believe that any Namely confidential information or lawful restrictive covenant has been compromised.

3.  We will continue to seek top talent in support of our ambitious targets for 2021 and beyond, which may include the hiring of former Namely employees via in-bound outreach, out-bound recruitment, and the referral networks of individuals not under valid restrictive covenants.[1]

---

[1] We reject outright the request made in Mr. Stephan's letter dated February 26, 2021 (which I only just received on April 13, 2021 as an email attachment), stating: "Namely, therefore, also requests that Rippling . . . refrain from hiring any of Mr. Rothman's former co-workers or others involved in Namely's client services function." By the way, this suggestion is the criminal sort of illegal. *See* <u>DOJ and FTC's Antitrust Guidance for Human Resources</u>

1

4. We are disappointed that Namely would resort to misrepresentations and intimidation tactics to scare employees away from exercising their rights to find new jobs. As Namely is likely aware, its non-compete and non-solicitation clauses are overbroad and, for the most part, unenforceable.[2]

5. We will not tolerate continued attempts by Namely to intimidate and harass our employees and prospective hires, and reserve all rights.[3] Please also consider this to be our response to the various letters sent directly to our employees.

With that said, I do hope Namely will inform the copied individuals that it will not seek to enforce any overbroad or unlawful non-competition and non-solicitation provisions, and will refrain from making further misrepresentations and harassing statements. Namely might also let these individuals know they can learn more about their rights regarding non-competes and by extension non-solicits which follow the same principles (and even report unreasonable ones) on the New York Attorney General website.

Let's do the right thing here and drop this charade.

Sincerely,

*/s/ Vanessa Wu*
General Counsel

---

Professionals (October 2016) (where the DOJ and FTC make clear that naked "no hire" or "no poaching" agreements violate antitrust laws and will receive criminal treatment).

[2] Non-solicitation clauses are only enforceable to the extent that they are tied to the protection of legitimate business interests, and even then, solicitation must have actually occurred. *See BDO Seidman v. Hirshberg*, 93 N.Y.2d 382 (1999). In her April 16, 2021 letter to Sara Baig, Ms. Stewart falsely writes that Ms. Baig has "chosen not to honor [her] non-recruitment commitments," and that the purported basis for this claim is that Ms. Baig now supervises Tedros Woldagabriel. Just so we're clear, Ms. Baig did not even know that Mr. Woldagabriel, who was referred independently by a friend under no non-solicitation obligations, would report to her until *after* he accepted his offer, and only then, via a new hire laptop shipment email alert! Ms. Stewart, there is nothing untoward here. Please require your client to provide you with factual information before lodging baseless accusations at our employees.

[3] We further understand that Namely CEO Larry Dunivan, at a recent all-company meeting, made off-color remarks about Rippling and demanded that Namely employees "tell all of [their] friends who went over to Rippling that they will be hearing from Namely's legal team." Well, our employees did hear from former Namely colleagues and described such reports as "distressing." It goes without saying that a CEO's anger over employee departures is *not* a legitimate business justification for enforcing non-competes and non-solicitation clauses nor the harassment and intimidation of our employees. *See Lazer Inc. v. Kesselring*, 823 N.Y.S.2d 834, 838 (Sup. Ct. Monroe Co. 2005); *see also Flatiron Health, Inc. v. Carson*, 2020 U.S. Dist. LEXIS 48699 (S.D.N.Y. March 20, 2020) (striking the *entirety* of Flatiron's overbroad restrictive covenants for lack of business justification). Neither is a desire to restrain employee mobility, and especially not amongst a group of customer support and implementation representatives that Namely itself recruited from competitors like ADP, Ultipro, and Zenefits nor in a year where Namely reduced staff by 40%. *Id.* And while we empathize with the trials of leadership during a pandemic, this episode has only driven more interest in Rippling from Namely personnel, so the opposite of what Namely is going for.

cc:    Sara Baig, sbaig@rippling.com
       Douglas Chiki, dchiki@rippling.com
       Mischelle Park, mpark@rippling.com
       Samuel Rothman, srothman@rippling.com
       Kylee Reeves, kreeves@rippling.com
       Theodore Werner, twerner@rippling.com
       Tedros Woldagabriel, teddy@rippling.com

3

**<u>Attachments</u>**

(to follow)

LAW OFFICES
## SCHREEDER, WHEELER & FLINT, LLP
1100 PEACHTREE STREET, NE
SUITE 800
ATLANTA, GEORGIA 30309-4516

(404) 681-3450
FACSIMILE: (404) 681-1046

Lynn C. Stewart

E-Mail: lstewart@swfllp.com
Direct Dial: (404) 954-9865

April 16, 2021

**_Via Email_**

Vanessa Wu, Esq.
General Counsel
People Center, Inc. d/b/a Rippling ("Rippling")
2443 Fillmore St. #380-7361
San Francisco, CA 94115

**Email:** vanessa@rippling.com

Attn: Rippling Legal Department
2443 Fillmore St #380-7361
San Francisco, CA 94115

**Email:** notices@rippling.com

> **Re:** **Continued Recruitment of Namely, Inc. employees subject to restrictive covenants**

Dear Ms. Wu:

This firm represents Namely, Inc. ("Namely" or the "Company"). By letter dated February 28, 2021, and again by email of April 13, 2021, you were advised that several recent Rippling hires, primarily in the client operations organization working out of Namely's Atlanta office, had been recruited to work at Rippling. You were provided a copy of Namely's Proprietary Information and Inventions Agreement ("PIIA") which contains restrictive covenants applicable to its employees' post-employment activities.

Despite Namely's attempt to proactively reach out to personally advise you that Rippling was hiring individuals from a direct competitor who may be in violation of their PIIA due to their participation in Rippling's repeated attempts to hire Namely co-workers, and use of Namely's Confidential Information, there has been no response to date from Rippling. Rippling has, in fact, continued to aggressively hire Namely employees, some of whom appear to be direct reports to Sarah Baig, a former Namely employee who is subject to the non-recruitment provisions of her Namely PIIA through November 12, 2021. By letter dated April 16, 2021, Namely has advised Ms. Baig of the breach of her post-employment obligations and the distinct possibility of litigation if such actions continue. A copy of this correspondence to Ms. Baig is enclosed.

LAW OFFICES
SCHREEDER, WHEELER & FLINT, LLP

Page 2
April 16, 2021

Rippling is again requested to take all necessary steps to ensure that former Namely employees currently working at Rippling comply with their legal obligations to their former employer. Namely thus anticipates that there will be no further need to proceed against the former Namely employees, and their new employer, if the improper recruiting tactics end and no Namely Confidential Information is provided to or utilized by Rippling.

However, in the event that this dispute continues please ensure that a litigation hold is placed on all Rippling communications from May 1, 2020 on, including to or from the ex-Namely employees on the attached list, as well as other Rippling departments and employees including the human resources department, the customer service department, and Deva Santiago, VP of Human Talent. The full extent of the litigation hold is delineated in the cease and desist letter sent to Ms. Baig enclosed herein.

Sincerely,

*/s/ Lynn C. Stewart*
Lynn C. Stewart

Enclosures

LAW OFFICES
## SCHREEDER, WHEELER & FLINT, LLP

Page 3
April 16, 2021

| | | | |
|---|---|---|---|
| Douglas | Chiki | Client Operations | 8/14/2020 |
| Mischelle | Park | Client Operations | 11/6/2020 |
| Sara | Baig | Client Operations | 11/13/2020 |
| Samuel | Rothman | Client Operations | 2/26/2021 |
| Kylee | Reeves | Client Operations | 3/22/2021 |
| Theodore | Werner | Client Operations | 4/7/2021 |
| Tedros | Woldagabriel | Client Operations | 4/16/2021 |

LAW OFFICES
## SCHREEDER, WHEELER & FLINT, LLP
1100 PEACHTREE STREET, NE
SUITE 800
## ATLANTA, GEORGIA 30309-4516

(404) 681-3450
FACSIMILE: (404) 681-1046

Lynn C. Stewart

E-Mail: lstewart@swfllp.com
Direct Dial: (404) 954-9865

April 16, 2021

***Via Federal Express, Certified Mail and Email***

Ms. Sara Baig                                    **Email:** sara_k_baig@yahoo.com
4228 N. Dixie Highway              *Certified Mail No.*    7014 3490 0002 3536 1923
Unit 106
Oakland Park, Florida 33334

Re:     **DEMAND TO CEASE AND DESIST**
          **Continuing Violations of Your Post-Employment Obligations to Namely, Inc.**

Dear Ms. Baig:

This firm represents your former employer Namely, Inc. ("Namely" or the "Company"). Your employment as a Professional Services Team Lead with Namely ended on November 13, 2020. While at Namely you were a member of the Client Operations department and had extensive contact with Namely's clients utilizing Namely's Confidential Information and its proprietary systems and processes. You, on behalf of and for Namely's benefit, provided services in Florida and Georgia among other locations. Sometime after November 13, 2020 you subsequently became employed with People Center, Inc. d/b/a Rippling ("Rippling"). Rippling, a direct Namely competitor in the HR software space, employed you in a supervisory capacity and similar role to the one which you held while at Namely, and upon information and belief, you continue in that customer facing role with Rippling today, working in Florida and supervising employees, including some based in Georgia and at least one of which you worked with while at Namely.

If you are represented by legal counsel, please forward this letter to your attorney. We also ask that you immediately advise your Rippling direct supervisor and the Rippling human resources department of this communication and your response to it.

While employed at Namely, you received trade secrets, confidential information and proprietary business information concerning Namely, its business, and its clients/customers ("Confidential Information"). On September 28, 2017 you signed Namely's Proprietary Information and Inventions Agreement ("PIIA") which contains restrictive covenants applicable to your post-employment activities. A copy is enclosed for your convenience in case you have forgotten your post-employment obligations to Namely. Under paragraph 6 you were required to provide a copy of the PIIA to future employers, and under paragraph 7 of the PIIA you consent to

LAW OFFICES
**SCHREEDER, WHEELER & FLINT, LLP**

Page 2
April 16, 2021

having subsequent employers, such as Rippling, notified of your rights and obligations under the PIIA.

Of immediate significance is your continuing post-employment obligation to Namely, pursuant to paragraph 4(f) of the PIIA, to not, alone or in concert with others, solicit, encourage, influence, interview, recruit or induce Namely employees or independent contractors ("Other Employees") to cease working for the Company or to begin employment with another company, contact any Other Employee for any such purposes, interfere with Other Employee's employment at Namely, or hire or offer employment to any Other Employee for a 12-month post-employment period, which in your case is from November 13, 2020 until November 12, 2021. **Namely demands that you adhere to these obligations and refrain from soliciting, encouraging, influencing, interviewing, recruiting or hiring (or assisting Rippling in hiring) any Namely employees.**

Please advise me in writing by close of business April 23, 2021 if (and when) you notified Rippling of your post-employment obligations to Namely and whether (and when) Rippling has instructed you to (1) abide by your post-employment obligations and (2) cease hiring or assisting anyone at Rippling from recruiting Namely employees.

Unfortunately, to date you have apparently chosen not to honor your non-recruitment commitments, and several Namely employees, including but not limited to Georgia based employees Kylee Reeves, Teddy Werner, Tedros Woldagabriel, and Sam Rothman, have recently quit to go to work for Rippling and, at least in the case of Mr. Woldagabriel, to work under your direct supervision. The evidence appears to indicate that you and Rippling are apparently acting in concert by actively recruiting these and other Namely employees with whom you worked with and supervised. Namely has been significantly impacted by your actions, and those of your Rippling co-conspirators, and will be forced to seek all legal recourse available to stop this breach of your contractual obligations if you do not immediately cease and desist your violations of paragraph 4(f) of the PIIA. By letter dated February 26, 2021 Rippling was notified of Mr. Rothman's PIIA and was asked to refrain from hiring any of Mr. Rothman's former co-workers or others involved in Namely's client services function, so even if you did not promptly inform Rippling of your obligations it is now fully aware that the former Namely employees it has recently hired are bound by restrictive covenants.

In addition, while employed by Namely, you received Confidential Information including but not limited to information pertaining to Namely's business plans, financial records, marketing plans, operational methods, and clients. The PIIA is specifically tailored to protect such information. You are obligated under the PIIA and applicable law not to disclose any such Confidential Information while employed by Rippling. On or before close of business on April 23, 2021 please advise me in writing as to the specifics of any disclosure of Namely's Confidential Information. In addition, you must return such Confidential Information to me, and confirm, in

LAW OFFICES
## SCHREEDER, WHEELER & FLINT, LLP

Page 3
April 16, 2021

writing signed under oath, that you will not violate paragraphs 3 and 4(f) of the PIIA going forward.

At this time, if you will confirm under oath that you will cease assisting Rippling in recruiting Namely employees and using Namely's Confidential Information, Namely does not intend to seek to stop you from working at Rippling. However, please know that nothing in this letter waives Namely's right to also enforce its non-compete obligations against you and other former Namely employees should Namely believe such an action is necessary to protect and enforce the interests we have detailed above. If you do not comply with the terms of this letter be advised that Namely will seek prompt legal recourse to protect its interests.

### Your Duty to Preserve Evidence

Finally, because this dispute may result in litigation, please be advised that you, and those individuals and entities who are in receipt of this communication, are charged with the responsibility to preserve records, whether hard copy or Electronically Stored Information ("ESI"), relating to the following areas:

i.      Your possession and/or use/dissemination of Namely information that may constitute confidential, proprietary, or trade secret information;

ii.     Your competition with Namely during or after your employment by Namely;

iii.    Your communications with Namely employees, clients, and other business relationships since November 13, 2020 and going forward, whether directly or in any written form, including any form of social media, text messages, and emails;

iv.    Documents created and/or used by you within the scope of your employment with Namely or during the period of time you were employed with Namely which you used to perform your responsibilities and duties for Namely, including, but not limited, to documents stored on any electronic device (e.g., cell phone or laptop), whether Company issued or otherwise.

v.     All other documents and ESI relating, whether directly or indirectly, to any of the subject matter of this letter.

**Namely requests that you: (1) take every reasonable step to preserve any ESI described in i-v above; (2) take every reasonable step to ensure that such ESI is not disseminated any further; and (3) take every reasonable step to return any such information belonging to Namely to me as Namely's counsel. This includes the return, by April 23, 2021, of any documents or information belonging to Namely or developed by you pursuant to your employment with Namely.**

LAW OFFICES
## SCHREEDER, WHEELER & FLINT, LLP

Page 4
April 16, 2021

Of course, you are aware of the information in your possession and are in a better position to know the specifics of the electronic devices that you use on a day-to-day basis. We ask that you take steps to *preserve* that data on any such devices in accordance with the general preservation standards outlined below. This includes, but is not limited to, an obligation to discontinue any activities that could corrupt files containing ESI relating to Namely or your communications with Namely employees or ex-employees who left Namely since November 13, 2020 (such as data destruction, modifying files, running wiping programs, destroying hardware, etc.). While we have identified certain specific places below, we ask that you make every effort to preserve all data that relates to Namely, or your competition with Namely, and your communications with Namely employees, or business relationships, wherever it is found.

Namely requests, at a minimum, that you take at least five steps to ensure that ESI is properly preserved.

*First*, Namely requests that you segregate and separately save computer files containing Namely's data that you accessed or stored during your employment. We ask that you do this immediately. ESI can be easily deleted, modified, or corrupted, and it is important to create a record of what you have as of your receipt of this letter.

*Second*, we ask that you segregate and separately save ESI on any portable devices (such as zip drives, removable thumb drives, or any other electronic medium) that contain any information described in i-v above.

*Third*, if you have shared any Namely information with any third party, including but not limited to Kylee Reeves, Teddy Werner, Tedros Woldagabriel, and Sam Rothman or anyone at Rippling, we ask that you (a) notify them immediately by a copy of this letter and (b) notify Namely of that third party's identity if they are not specifically copied on this communication. Any party receiving notice under this provision, including Rippling, will be treated in the same manner as you for purposes of this preservation letter.

*Fourth*, we ask that any cell phone that you used during your employment with Namely and any cell phone you have used post-employment to contact any Namely employee, client, or business relationship be treated in the same way as your computer (as described above). Cell phones can contain text messages and call histories that could be important to this dispute.

*Fifth*, for any email account that you used during your employment at Namely to transmit or store any Namely ESI and any email account you have used post-employment to communicate with any Namely employee, client, or business relationship, we ask that you immediately preserve all emails associated with such account(s). This may require you to physically print the emails, or otherwise save them electronically. Please be aware that for many third-party accounts, you cannot close the account without destroying important information and causing the loss of ESI.

LAW OFFICES
SCHREEDER, WHEELER & FLINT, LLP

Page 5
April 16, 2021

Your failure to preserve relevant data may constitute spoliation of evidence, which may subject you to sanctions in any future civil action between you and Namely. We trust that you will preserve all relevant hard copy documents and ESI. In the event of a dispute arising out of your failure to preserve documents, we will rely on this letter in any civil action as evidence of our request and notice to you, and those individuals copied on this communication of your collective preservation obligations.

I look forward to hearing from you, or your attorney, before April 23, 2021 that you will honor the commitments you made to Namely.

Sincerely,

*/s/ Lynn C. Stewart*
Lynn C. Stewart

cc:    Vanessa Wu, Esq. General Counsel, Rippling
       Ms. Kylee Reeves
       Mr. Teddy Werner
       Mr. Tedros Woldagabriel
       Mr. Sam Rothman

# NAMELY, INC. EMPLOYEE PROPRIETARY INFORMATION AND INVENTIONS AGREEMENT

The following agreement (the "Agreement") between NAMELY, INC., a Delaware corporation (the "Company"), and the individual identified on the signature page to this Agreement ("Employee" or "I") is effective as of October 16, 2017. I acknowledge that this Agreement is a material part of the consideration for my employment and/or continued employment by the Company, and for Company's entrusting to me new Proprietary Information (as defined below) relating to the Company's business during my employment after this Agreement is signed. In exchange for the foregoing, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.   **No Conflicts.** I represent that my performance of all the terms of this Agreement and of all of my job duties as an employee of the Company does not and will not breach any agreement with any other person or entity, including any agreement to maintain the confidentiality of any confidential or trade secret information of any third party. I have not made, and agree not to make, any agreement, oral or written, that is in conflict with this Agreement or my employment with the Company. I will not violate any agreement with or the rights of any third party. When acting within the scope of my employment (or otherwise on behalf of the Company), I will not use or disclose my own or any third party's confidential information or intellectual property (collectively, "Restricted Materials"), except as expressly authorized by the Company in writing. Further, I have not retained anything containing or reflecting any confidential information of a prior employer or other third party, whether or not created by me. Additionally, I will not bring onto the Company's premises any unpublished document or property belonging to any third party, including any of my former employers, unless consented to in writing by such third party.

2.   **Inventions.**

a.   **Definitions.** "Intellectual Property Rights" means any and all patent rights, copyright rights, trademark rights, mask work rights, trade secret rights, *sui generis* database rights and all other intellectual and industrial property rights of any sort throughout the world (including any application therefor). "Invention" means any idea, concept, discovery, invention, development, research, technology, work of authorship, trade secret, software, firmware, content, audio-visual material, tool, process, technique, know-how, data, plan, device, apparatus, specification, design, prototype, circuit, layout, mask work, algorithm, program, code, documentation or other material or information, tangible or intangible, whether or not it may be patented, copyrighted, trademarked or otherwise protected (including all versions, modifications, enhancements and derivative works thereof).

b.   **Assignment.** To the fullest extent under applicable law, the Company shall own all right, title and interest in and to all Inventions (including all Intellectual Property Rights therein or related thereto) that are made, conceived or reduced to practice, in whole or in part, by me during the term of my employment with the Company and which arise out of any use of Company's facilities or assets or any research or other activity conducted by, for or under the direction of the Company (whether or not (i) conducted at the Company's facilities, (ii) during working hours or (iii) using Company assets), or which are useful with or relate directly or indirectly to any "Company Interest" (meaning any product, service, other Invention or Intellectual Property Right that is sold, leased, used, proposed, under consideration or under development by the Company). I will promptly disclose and provide all of the foregoing Inventions (the "Assigned

Inventions") to the Company. I hereby make and agree to make all assignments to the Company necessary to effectuate and accomplish the foregoing ownership. Assigned Inventions shall not include any Invention that is both (x) developed entirely on my own time, without use of any Company facilities, assets, ideas or direction and (y) not useful with or related to any Company Interest.

c.   **Assurances.** I will further assist the Company, at its expense, to evidence, record and perfect such assignments, and to perfect, obtain, maintain, enforce and defend any rights specified to be so owned or assigned. I hereby irrevocably designate and appoint the Company and its officers as my agents and attorneys-in-fact, coupled with an interest, to act for and on my behalf to execute and file any document and to perform all other lawfully permitted acts to further the purposes of the foregoing with the same legal force and effect as if executed by me.

d.   **Other Inventions.** If I wish to clarify that something created by me prior to my employment, which relates or may relate to the Company's actual or proposed business, is not within the scope of the assignment of Inventions under this Agreement, then I have listed it on Appendix A. If (i) I use or disclose any Restricted Materials (including anything listed in Appendix A) when acting within the scope of my employment (or otherwise on behalf of the Company), or (ii) any Assigned Invention cannot be fully made, used, reproduced, sold, distributed, or otherwise exploited without using, misappropriating or violating any Restricted Materials, I hereby grant and agree to grant to the Company a perpetual, irrevocable, worldwide, royalty-free, non-exclusive, transferable, sublicensable right and license to use, disclose, exploit and exercise all rights in such Restricted Materials, including any Intellectual Property Rights therein. I will not use or disclose any Restricted Materials for which I am not fully authorized to grant the foregoing license.

e.   **Moral Rights.** To the extent allowed by applicable law, the terms of this Section 2 include all rights of paternity, integrity, disclosure, withdrawal and any other rights that may be known or referred to as moral rights, artist's rights, droit moral or the like (collectively, "Moral Rights"). To the extent I retain any such Moral Rights under applicable law, I hereby ratify and consent to any action that may be taken with respect to such Moral Rights by or authorized by the Company and agree not to assert any Moral Rights with respect thereto. I will confirm any such ratification, consent or agreement from time to time as requested by the Company. Furthermore, I agree that notwithstanding any rights of publicity, privacy or otherwise (whether or not statutory) anywhere in the world and without any further compensation, the Company may and is hereby authorized to use my name, likeness and voice in connection with promotion of its business, products and services and to allow others to do the same.

1

3.   **Proprietary Information.** I acknowledge and agree that during my employment with the Company, and by the nature of my duties and obligations for the Company, I will develop or acquire knowledge of Proprietary Information relating to the Company, its business, and that of its customers, business partners, and affiliates.  "<u>Proprietary Information</u>" includes all trade secrets, know-how, technical, operating, financial, and other business information and materials, whether or not reduced to writing or other medium, and whether or not marked or labeled confidential, proprietary or the like, specifically including, but not limited to, information regarding source codes, software programs, computer systems, designs, graphics, business plans, sales and marketing information, technologies, compilations of information, writings or other materials, algorithms, formulae, works of authorship, techniques, documentation, models and systems, sales and pricing strategy and techniques, development, manufacturing, strategies, procedures, databases, systems, Assigned Inventions, products, improvements, modifications, methodology, processes, concepts, records, files, memoranda, reports, plans, proposals, price lists, customer and supplier lists, customer and supplier information, information received from others that the Company is obligated to treat as confidential or proprietary, and any other technical, operating, non-public financial, and other business information that has commercial value, whether relating to the Company, its business, potential business, or operations, or the business of any of the Company's affiliates, subsidiaries, related entities, clients, customers, suppliers, vendors, licensees, or licensors, that I may develop or of which I may acquire knowledge during my employment with the Company, whether prior to, during, or subsequent to my execution of this Agreement, and all other business affairs, methods, and information not readily available to the public. Proprietary Information shall not include information that, I can document, is or becomes readily available to the public without restriction through no fault of mine (including breach of this Agreement)

I acknowledge and agree that each and every part of the Company's Proprietary Information: (a) has been developed by the Company at significant effort and expense; (b) is sufficiently secret to derive economic value from not being generally known to other parties; (c) is proprietary to and a trade secret of the Company; and (d) constitutes a protectable business interest of the Company.

In recognition of the foregoing, I covenant and agree as follows:

(i)   I will use Proprietary Information only in the performance of my job duties for and obligations to the Company. I will not use Proprietary Information, directly or indirectly, at any time during or after my employment with the Company, for my personal benefit, for the benefit of any other person or entity, or in any manner adverse to the interests of the Company. Further, at all times during and after my employment with the Company, I will keep secret all Proprietary Information and will not make use of, divulge, or otherwise disclose Proprietary Information, directly or indirectly, to anyone outside of the Company, except with the Company's prior written consent;

(ii)   I will take all necessary and reasonable steps to protect Proprietary Information from being disclosed to anyone within the Company who does not have a need to know the information and to anyone outside of the Company, except with the Company's prior written consent;

(iii)   I shall not, at any time, remove, copy, download, or transmit any information from the Company during my employment with the Company, except for the benefit of the Company and in accordance with this Agreement and the Company's policies; and

(iv)   Immediately upon termination of my employment (for any or no reason, whether voluntary or involuntary), and at any time upon the Company's request, I will promptly return to the Company all items containing or embodying Proprietary Information (including all copies), except that I may keep my personal copies of (a) my compensation records, (b) materials distributed to shareholders generally and (c) this Agreement.

I also recognize and agree that I have no expectation of privacy with respect to the Company's networks, telecommunications systems or information processing systems (including, without limitation, stored computer files, email messages and voice messages), and that my activity and any files or messages on or using any of those systems may be monitored at any time without notice, regardless of whether such activity occurs on equipment owned by me or the Company. I further agree that any property situated on the Company's premises and owned, leased or otherwise possessed by the Company, including computers, computer files, email, voicemail, storage media, filing cabinets or other work areas, is subject to inspection by Company personnel at any time with or without notice.

Notwithstanding the foregoing, I acknowledge this Agreement does not limit my ability to communicate with any local, state, or federal government agencies or otherwise participate in any investigation or proceeding that may be conducted by any government agency, including providing documents or other information. I further acknowledge that this Agreement does not limit my right to receive an award for information provided to any government agencies; however, I may not receive other monetary compensation related to the filing of a charge or complaint with any government agencies.

Additionally, nothing in this Agreement shall be construed as, or shall interfere with, abridge, limit, restrain, or restrict my right, without prior authorization from or notification to the Company, to engage in any activity or conduct protected by Section 7 of the National Labor Relations Act, including but not limited to discussing the terms or conditions of my employment with other Company employees or third parties.

I understand that I shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (A) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.  In addition, if I file a lawsuit for retaliation by the Company for reporting a suspected violation of law, I understand that I may disclose trade secret information to my attorney and use the trade secret information in the court proceeding, if I: (A) file any document containing trade

secret information under seal; and (B) do not disclose trade secret information, except pursuant to court order.

4.  **Covenants of Loyal Service and Post-Termination Restrictions.**

(a)  <u>Consideration</u>.  In exchange for and ancillary to the promises of the Company to provide (i) new or continued employment to Employee; (ii) new Proprietary Information, including but not limited to trade secrets, to Employee during Employee's employment after this Agreement is signed and Employee's agreement not, at any time, to use or disclose such information to or for the benefit of anyone other than the Company; (iii) the opportunity for Employee to be exposed to Clients of the Company; (iv) specialized training; or (v) other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Employee agrees to be bound by the covenants set forth in this Agreement.  Employee acknowledges that each item of consideration described above independently provides new and valuable consideration for the covenants and restrictions in this Agreement that Employee has not previously received and that Employee would not be entitled to receive such unless Employee agreed to the covenants and restrictions set out in this Agreement.

(b)  <u>Definitions</u>.  For purposes of this Agreement: (i) a "<u>Competitive Entity</u>" shall mean any individual person or entity which, directly or indirectly, conducts a business enterprise, activity or line of business which competes with any enterprise, activity or line of business in which the Company or its affiliates engage or any services provided by the Company or its affiliates; (ii) the term "<u>Client</u>" means the Company's clients, customers, and client or customer leads or those of the Company's affiliates, and shall include not only the actual person, firm, corporation, venture or other entity that is the named Client of the Company or its affiliates, but any related person, firm, corporation, venture or other entity, including, but not limited to the estate of such Client, a trust created by such Client, any partnership or corporation wherein such Client is a member, a partner or a more than ten percent (10%) shareholder, or any joint venture in which such Client is a participant; and (iii) the term "<u>Restricted Area</u>" shall mean the states in which Employee provided any services on behalf of the Company, or as to which Employee had access to Confidential Information regarding the Company's business during the last two years of Employee's employment with the Company or such shorter time as Employee has been employed.

(c)  <u>Loyal Service</u>.  Employee agrees that during the term of Employee's employment with the Company, Employee shall devote Employee's full working time and best efforts to the Company's business and will work solely for it and will not consult, work or perform services for any other person, firm, company, entity, or enterprise without the prior written consent of the Company.  Employee agrees to comply with all applicable laws, as well as all Company rules, policies, and procedures adopted from time to time.

(d)  <u>Covenants Regarding Competition</u>.  At all times during the term of Employee's employment with the Company and for a period of one (1) year immediately following the date on which Employee ceases rendering services in any capacity to the Company for any reason (the "<u>Non-Compete Period</u>"), Employee

shall not - directly or indirectly, and whether as a stockholder, venturer, partner, member, proprietor, principal, employee, agent, consultant or otherwise – own a Competitive Entity in the Restricted Area, or engage in or be employed or retained by a Competitive Entity in the Restricted Area in any position or role that would involve services, or the supervision of services, that are similar in function or purpose to those Employee performed on behalf of the Company.

(e)  <u>Covenants Regarding Clients</u>.  At all times during the term of Employee's employment with the Company and for a period of one (1) year immediately following the date on which that employment ceases for any reason, Employee shall not, directly or indirectly, alone or in concert with or on behalf of others, (i) solicit, encourage, influence or induce, or attempt to solicit, encourage, influence or induce, any Client that does business with the Company and with whom Employee had business-related contact, or regarding whom Employee had access to Proprietary Information, while employed by the Company, to cease doing business with the Company or its affiliates or to begin doing business with a Competitive Entity, (ii) contact any such Client for any such purposes, or (iii) otherwise interfere with any relationship between the Company or its affiliates and any such Client.

(f)  <u>Covenants Regarding Other Employees</u>.  At all times during the term of Employee's employment with the Company, and for a period of one (1) year immediately following the date on which Employee ceases rendering services in any capacity to the Company for any reason, Employee shall not, directly or indirectly, alone or in concert with or on behalf of others, (i) solicit, encourage, influence, interview, recruit or induce, or attempt to solicit, encourage, influence, interview, recruit or induce any other employee of the Company or its affiliates (the "<u>Other Employees</u>"), to cease working for the Company or its affiliates or to begin employment with another employer or entity, (ii) contact any Other Employee for any of such purposes, (iii) otherwise interfere with the employment of any Other Employee, or (iv) hire or offer employment to, or otherwise retain or engage, any Other Employee.

(g)  <u>Time Periods Extended for Breach</u>.  The foregoing time frames shall be increased by the period of time beginning from the commencement of any violation of the foregoing provisions until such time as Employee has cured such violation.

(h)  <u>Reasonableness of Restrictions, Hardship and Inevitable Disclosure</u>.  Employee hereby acknowledges and agrees that (i) the provisions of Section 4 (collectively, the "<u>Covenants</u>") are intended to supplement, and to further reinforce Employee's obligations with respect to the Proprietary Information and are ancillary to an otherwise enforceable agreement; (ii) the Covenants are fair, reasonable, and not unduly restrictive, (iii) the Covenants are supported by independent valuable consideration, as described in Section 4(a), to be provided to Employee by the Company; and (iv) because, among other things, (v) the Company is engaged in a highly competitive industry and Employee has unique access to, and will continue to have access to, Proprietary Information, (vi) the Company has made and will continue to make substantial investments to develop its business interests and goodwill, (vii) such investments are worthy of protection, and (viii) the Company's need for the protection afforded by the

Covenants is greater than any hardship Employee might experience by complying with their terms, the Covenants contain reasonable limitations as to time, geographic scope, and scope of activity to be restrained that do not impose a greater restraint than is necessary to protect the goodwill and other legitimate business interests of the Company and the Proprietary Information. Employee further acknowledges and agrees that disclosure of Proprietary Information would be inevitable should Employee seek or attempt to engage in activities of the type restricted or prohibited pursuant to the Covenants.

The parties agree, and do hereby acknowledge, that the restrictions in the Covenants are a materially significant and essential aspect of the Company's decision to hire and/or retain Employee as an employee and to provide Employee with access to Proprietary Information, and that the provisions contained in the Covenants have substantial value to the Company.

5.     **Employment at Will.** I agree that this Agreement is not an employment contract for any particular term. I have the right to resign and the Company has the right to terminate my employment at will, at any time, for any or no reason, with or without cause, and with or without notice. This Agreement constitutes the entire agreement between the parties relating to the subject matter hereof, and supersedes all prior agreements and understandings, whether oral or written, with respect to same, with the exception of (1) any confidentiality obligations I have by virtue of any prior agreement, policy, common law, or statute; and (2) any restrictive covenants I have agreed to in connection with my employment with the Company. This Agreement can only be changed by a subsequent written agreement signed by the Chief Executive Officer or President of the Company, or an authorized designee.

6.     **Survival.** I agree that any change or changes in my employment title, duties, compensation or equity interest after the signing of this Agreement shall not affect the validity or scope of this Agreement. I agree that my obligations under Sections 2 and 3 of this Agreement shall continue in effect after termination of my employment, regardless of the reason, and whether such termination is voluntary or involuntary, and that the Company is entitled to communicate my obligations under this Agreement to any of my potential or future employers.     I will provide a copy of this Agreement to any potential or future employers of mine, so

that they are aware of my obligations hereunder. My obligations under Sections 2 and 3 also shall be binding upon my heirs, executors, assigns and administrators, and shall inure to the benefit of the Company, its Affiliates, successors and assigns. This Agreement may be freely assigned by the Company to any third party.

7.     **Notification to New Employer.** In the event that I leave the employ of the Company, I hereby consent to the notification of my new employer of my rights and obligations under this Agreement.

8.     **Choice of Law and Jurisdiction.** Any dispute in the meaning, effect or validity of this Agreement shall be resolved in accordance with the laws of the State of New York without regard to the conflict of laws provisions thereof. Any legal action or proceeding relating to this Agreement shall be brought exclusively in the state or federal courts located in New York County, New York, and each party consents to the jurisdiction thereof.

9.     **No Waiver.** The failure of either party to enforce its rights under this Agreement at any time for any period shall not be construed as a waiver of such rights. Unless expressly provided otherwise, each right and remedy in this Agreement is in addition to any other right or remedy, at law or in equity, and the exercise of one right or remedy will not be deemed a waiver of any other right or remedy.

10.     **Severability.** If one or more provisions of this Agreement are held to be illegal or unenforceable under applicable law, such illegal or unenforceable portion shall be limited or excluded from this Agreement to the minimum extent required so that this Agreement shall otherwise remain in full force and effect and enforceable.

11.     **Remedies.** I acknowledge and agree that any breach or threatened breach of this Agreement will cause irreparable harm to the Company for which damages would not be an adequate remedy, and, therefore, the Company is entitled to injunctive relief with respect thereto (without the necessity of posting any bond) in addition to any other remedies.

*[Signature Page Follows]*

I HAVE READ THIS AGREEMENT CAREFULLY AND I UNDERSTAND AND ACCEPT THE OBLIGATIONS THAT IT IMPOSES UPON ME WITHOUT RESERVATION. NO PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME TO INDUCE ME TO SIGN THIS AGREEMENT. I SIGN THIS AGREEMENT VOLUNTARILY AND FREELY, WITH THE UNDERSTANDING THAT I EITHER (1) HAVE RETAINED A COPY OF THIS AGREEMENT OR (2) MAY, AT ANY TIME, REQUEST A COPY OF THIS AGREEMENT FROM THE COMPANY.

COMPANY

By: _____

Name:  MATTHEW STRAZNITSKAS

Title:   CHIEF EXECUTIVE OFFICER

EMPLOYEE

By: _____
Sara Baig (Sep 28, 2017)

Name:   Sara Baig

Date:   Sep 28, 2017

**<u>Appendix A</u>**

**Prior Inventions**

The following is a complete list of all inventions or improvements relevant to the subject matter of my employment by NAMELY, INC. (the "**Company**") that have been made or conceived or first reduced to practice by me alone or jointly with others prior to my engagement by the Company:

◉  No inventions or improvements.

◯  The following inventions or improvements:

| Invention Title | Invention Date | Identifying Number or Brief Description |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

☐  Additional sheets attached.

_Sara Baig (Sep 28, 2017)_
_____

Employee Signature

Sep 28, 2017
_____

Date

6

**}}} RIPPLING**                                                    Vanessa Wu <vanessa@rippling.com>

---

**Namely Employee Restrictive Covenants**

**Paul Stephan** <paul.stephan@namely.com>                                    Tue, Apr 13, 2021 at 6:02 PM
To: vanessa@rippling.com

Vanessa,

I hope you're well. I wanted to confirm that you received the letter I sent you last month regarding Sam Rothman, a recent Rippling who was previously employed at Namely. Unfortunately, I did not have your email address when I sent the letter and while I confirmed that the physical copy did eventually make it to Fillmore Street address, I did not receive a response. I've attached a copy of the letter and Sam's PIIA for reference. Of course, during the pandemic that doesn't mean it actually made its way to you and I've since managed to track down your contact information.

I write now because, despite my previous letter, Rippling has hired several additional Namely employees and we are strongly considering legal action. Specifically, Rippling has hired Kylee Reeves, Teddy Werner, and Teddy Woldagabriel in the last month, all employees in Namely's client operations organization, and the last of which will apparently be reporting directly to Sara Baig, another recent Namely departure subject to a non-solicitation obligation under her Namely PIIA. I would also note that none of these employees are based in California and thus their restrictive covenants are fully enforceable.

You will receive a formal letter from our outside legal counsel later this week, but I wanted to reach out to you directly to confirm that you're aware of these activities and make it clear that Namely fully intends to enforce its rights. I would respectfully ask that you share this information with your HR team as well, if they aren't already aware.

Regards,

Paul

--

**Namely** 

**PAUL STEPHAN**
General Counsel
w: namely.com
m: (434) 999-8093
**Our mission is to build a better workplace.**



---

**2 attachments**

📎 **02-26-2021 Namely Letter to Rippling.pdf**
   870K

📎 **Samuel Rothman_PIIA 2017.pdf**
   340K



February 26, 2021

Rippling
55 2nd Street, 15th Floor
San Francisco, CA 94105
Attention: Vanessa Wu

Dear Ms. Wu:

I am General Counsel to Namely, Inc. ("Namely") and write regarding Rippling's recent employment of Sam Rothman, a former Pod Services Manager at Namely. This letter serves to remind you that Mr. Rothman is currently bound by a Proprietary Information & Inventions Agreement ("PIIA"). A copy of the PIIA that he signed on September 8, 2017 is attached for your reference.

In particular, the PIIA states that Mr. Rothman's obligations under the PIIA survive the termination of his employment. As such, this former employee is under a continuing obligation not to disclose any confidential information, including but not limited to information pertaining to Namely's business plans, financial records, marketing plans, operational methods, and clients. Moreover, Mr. Rothman is restricted from disclosing any other information that if shared with others would cause substantial competitive and other injury to Namely.

Based upon our understanding of the job that Mr. Rothman will be performing for Rippling, Namely believes that the position may raise issues regarding the use and disclosure of the Namely's confidential information that could violate his legal and contractual obligations.  As such, Namely requests that Rippling instruct Mr. Rothman of his post-employment confidentiality obligations and warrants that any work performed on behalf of Rippling will not breach such responsibilities.

Please be aware that the PIIA also restricts Mr. Rothman from soliciting Namely employees for a 12-month period post-employment. Namely, therefore, also requests that Rippling instruct Mr. Rothman of his post-employment non-solicit obligations and that Rippling refrain from hiring any of Mr. Rothman's former co-workers or others involved in Namely's client services function.

Should Namely learn that Mr. Rothman or any other former Namely employee has taken any action(s) that Namely deems in violation of his or her PIIA while employed by Rippling, or has been induced to do so by anyone employed by or working on behalf of Rippling, Namely shall take prompt and appropriate legal action, including but not limited to pursuing all remedies available for Rippling's tortious interference with Namely's contractual relations. Further, while Namely has no interest in preventing Mr. Rothman's future employment with your company, we are in no way waiving our rights to enforce Mr. Rothman's non-compete obligations as well.

**NAMELY**

www.namely.com   |   195 Broadway, 15th Floor. New York, NY 10007   |   P: 1-855-626-3591   |   F: 347-325-9488

# Namely

If you have any questions regarding the PIIA and/or this former employee, please direct all future correspondence to my attention.

Regards,

Paul Stephan
General Counsel, Namely

Enclosure:  Proprietary Invention Assignment Agreement

cc:    Deva Santiago - VP of Talent, Rippling

# NAMELY, INC. EMPLOYEE PROPRIETARY INFORMATION AND INVENTIONS AGREEMENT

The following agreement (the "Agreement") between NAMELY, INC., a Delaware corporation (the "Company"), and the individual identified on the signature page to this Agreement ("Employee" or "I") is effective as of September 25, 2017. I acknowledge that this Agreement is a material part of the consideration for my employment and/or continued employment by the Company, and for Company's entrusting to me new Proprietary Information (as defined below) relating to the Company's business during my employment after this Agreement is signed. In exchange for the foregoing, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. **No Conflicts.** I represent that my performance of all the terms of this Agreement and of all of my job duties as an employee of the Company does not and will not breach any agreement with any other person or entity, including any agreement to maintain the confidentiality of any confidential or trade secret information of any third party. I have not made, and agree not to make, any agreement, oral or written, that is in conflict with this Agreement or my employment with the Company. I will not violate any agreement with or the rights of any third party. When acting within the scope of my employment (or otherwise on behalf of the Company), I will not use or disclose my own or any third party's confidential information or intellectual property (collectively, "Restricted Materials"), except as expressly authorized by the Company in writing. Further, I have not retained anything containing or reflecting any confidential information of a prior employer or other third party, whether or not created by me. Additionally, I will not bring onto the Company's premises any unpublished document or property belonging to any third party, including any of my former employers, unless consented to in writing by such third party.

2. **Inventions.**

a. **Definitions.** "Intellectual Property Rights" means any and all patent rights, copyright rights, trademark rights, mask work rights, trade secret rights, *sui generis* database rights and all other intellectual and industrial property rights of any sort throughout the world (including any application therefor). "Invention" means any idea, concept, discovery, invention, development, research, technology, work of authorship, trade secret, software, firmware, content, audio-visual material, tool, process, technique, know-how, data, plan, device, apparatus, specification, design, prototype, circuit, layout, mask work, algorithm, program, code, documentation or other material or information, tangible or intangible, whether or not it may be patented, copyrighted, trademarked or otherwise protected (including all versions, modifications, enhancements and derivative works thereof).

b. **Assignment.** To the fullest extent under applicable law, the Company shall own all right, title and interest in and to all Inventions (including all Intellectual Property Rights therein or related thereto) that are made, conceived or reduced to practice, in whole or in part, by me during the term of my employment with the Company and which arise out of any use of Company's facilities or assets or any research or other activity conducted by, for or under the direction of the Company (whether or not (i) conducted at the Company's facilities, (ii) during working hours or (iii) using Company assets), or which are useful with or relate directly or indirectly to any "Company Interest" (meaning any product, service, other Invention or Intellectual Property Right that is sold, leased, used, proposed, under consideration or under development by the Company). I will promptly disclose and provide all of the foregoing Inventions (the "Assigned Inventions") to the Company. I hereby make and agree to make all assignments to the Company necessary to effectuate and accomplish the foregoing ownership. Assigned Inventions shall not include any Invention that is both (x) developed entirely on my own time, without use of any Company facilities, assets, ideas or direction and (y) not useful with or related to any Company Interest.

c. **Assurances.** I will further assist the Company, at its expense, to evidence, record and perfect such assignments, and to perfect, obtain, maintain, enforce and defend any rights specified to be so owned or assigned. I hereby irrevocably designate and appoint the Company and its officers as my agents and attorneys-in-fact, coupled with an interest, to act for and on my behalf to execute and file any document and to perform all other lawfully permitted acts to further the purposes of the foregoing with the same legal force and effect as if executed by me.

d. **Other Inventions.** If I wish to clarify that something created by me prior to my employment, which relates or may relate to the Company's actual or proposed business, is not within the scope of the assignment of Inventions under this Agreement, then I have listed it on Appendix A. If (i) I use or disclose any Restricted Materials (including anything listed in Appendix A) when acting within the scope of my employment (or otherwise on behalf of the Company), or (ii) any Assigned Invention cannot be fully made, used, reproduced, sold, distributed, or otherwise exploited without using, misappropriating or violating any Restricted Materials, I hereby grant and agree to grant to the Company a perpetual, irrevocable, worldwide, royalty-free, non-exclusive, transferable, sublicensable right and license to use, disclose, exploit and exercise all rights in such Restricted Materials, including any Intellectual Property Rights therein. I will not use or disclose any Restricted Materials for which I am not fully authorized to grant the foregoing license.

e. **Moral Rights.** To the extent allowed by applicable law, the terms of this Section 2 include all rights of paternity, integrity, disclosure, withdrawal and any other rights that may be known or referred to as moral rights, artist's rights, droit moral or the like (collectively, "Moral Rights"). To the extent I retain any such Moral Rights under applicable law, I hereby ratify and consent to any action that may be taken with respect to such Moral Rights by or authorized by the Company and agree not to assert any Moral Rights with respect thereto. I will confirm any such ratification, consent or agreement from time to time as requested by the Company. Furthermore, I agree that notwithstanding any rights of publicity, privacy or otherwise (whether or not statutory) anywhere in the world and without any further compensation, the Company may and is hereby authorized to use my name, likeness and voice in connection with promotion of its business, products and services and to allow others to do the same.

1

3.    **Proprietary Information.** I acknowledge and agree that during my employment with the Company, and by the nature of my duties and obligations for the Company, I will develop or acquire knowledge of Proprietary Information relating to the Company, its business, and that of its customers, business partners, and affiliates. "Proprietary Information" includes all trade secrets, know-how, technical, operating, financial, and other business information and materials, whether or not reduced to writing or other medium, and whether or not marked or labeled confidential, proprietary or the like, specifically including, but not limited to, information regarding source codes, software programs, computer systems, designs, graphics, business plans, sales and marketing information, technologies, compilations of information, writings or other materials, algorithms, formulae, works of authorship, techniques, documentation, models and systems, sales and pricing strategy and techniques, development, manufacturing, strategies, procedures, databases, systems, Assigned Inventions, products, improvements, modifications, methodology, processes, concepts, records, files, memoranda, reports, plans, proposals, price lists, customer and supplier lists, customer and supplier information, information received from others that the Company is obligated to treat as confidential or proprietary, and any other technical, operating, non-public financial, and other business information that has commercial value, whether relating to the Company, its business, potential business, or operations, or the business of any of the Company's affiliates, subsidiaries, related entities, clients, customers, suppliers, vendors, licensees, or licensors, that I may develop or of which I may acquire knowledge during my employment with the Company, whether prior to, during, or subsequent to my execution of this Agreement, and all other business affairs, methods, and information not readily available to the public. Proprietary Information shall not include information that, I can document, is or becomes readily available to the public without restriction through no fault of mine (including breach of this Agreement)

I acknowledge and agree that each and every part of the Company's Proprietary Information: (a) has been developed by the Company at significant effort and expense; (b) is sufficiently secret to derive economic value from not being generally known to other parties; (c) is proprietary to and a trade secret of the Company; and (d) constitutes a protectable business interest of the Company.

In recognition of the foregoing, I covenant and agree as follows:

(i)    I will use Proprietary Information only in the performance of my job duties for and obligations to the Company. I will not use Proprietary Information, directly or indirectly, at any time during or after my employment with the Company, for my personal benefit, for the benefit of any other person or entity, or in any manner adverse to the interests of the Company. Further, at all times during and after my employment with the Company, I will keep secret all Proprietary Information and will not make use of, divulge, or otherwise disclose Proprietary Information, directly or indirectly, to anyone outside of the Company, except with the Company's prior written consent;

(ii)    I will take all necessary and reasonable steps to protect Proprietary Information from being disclosed to anyone within the Company who does not have a need to know the information

and to anyone outside of the Company, except with the Company's prior written consent;

(iii)    I shall not, at any time, remove, copy, download, or transmit any information from the Company during my employment with the Company, except for the benefit of the Company and in accordance with this Agreement and the Company's policies; and

(iv)    Immediately upon termination of my employment (for any or no reason, whether voluntary or involuntary), and at any time upon the Company's request, I will promptly return to the Company all items containing or embodying Proprietary Information (including all copies), except that I may keep my personal copies of (a) my compensation records, (b) materials distributed to shareholders generally and (c) this Agreement.

I also recognize and agree that I have no expectation of privacy with respect to the Company's networks, telecommunications systems or information processing systems (including, without limitation, stored computer files, email messages and voice messages), and that my activity and any files or messages on or using any of those systems may be monitored at any time without notice, regardless of whether such activity occurs on equipment owned by me or the Company. I further agree that any property situated on the Company's premises and owned, leased or otherwise possessed by the Company, including computers, computer files, email, voicemail, storage media, filing cabinets or other work areas, is subject to inspection by Company personnel at any time with or without notice.

Notwithstanding the foregoing, I acknowledge this Agreement does not limit my ability to communicate with any local, state, or federal government agencies or otherwise participate in any investigation or proceeding that may be conducted by any government agency, including providing documents or other information. I further acknowledge that this Agreement does not limit my right to receive an award for information provided to any government agencies; however, I may not receive other monetary compensation related to the filing of a charge or complaint with any government agencies.

Additionally, nothing in this Agreement shall be construed as, or shall interfere with, abridge, limit, restrain, or restrict my right, without prior authorization from or notification to the Company, to engage in any activity or conduct protected by Section 7 of the National Labor Relations Act, including but not limited to discussing the terms or conditions of my employment with other Company employees or third parties.

I understand that I shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (A) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. In addition, if I file a lawsuit for retaliation by the Company for reporting a suspected violation of law, I understand that I may disclose trade secret information to my attorney and use the trade secret information in the court proceeding, if I: (A) file any document containing trade

2

secret information under seal; and (B) do not disclose trade secret information, except pursuant to court order.

4.  **Covenants of Loyal Service and Post-Termination Restrictions.**

(a)      Consideration.   In exchange for and ancillary to the promises of the Company to provide (i) new or continued employment to Employee; (ii) new Proprietary Information, including but not limited to trade secrets, to Employee during Employee's employment after this Agreement is signed and Employee's agreement not, at any time, to use or disclose such information to or for the benefit of anyone other than the Company; (iii) the opportunity for Employee to be exposed to Clients of the Company; (iv) specialized training; or (v) other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Employee agrees to be bound by the covenants set forth in this Agreement. Employee acknowledges that each item of consideration described above independently provides new and valuable consideration for the covenants and restrictions in this Agreement that Employee has not previously received and that Employee would not be entitled to receive such unless Employee agreed to the covenants and restrictions set out in this Agreement.

(b)      Definitions.   For purposes of this Agreement: (i) a "Competitive Entity" shall mean any individual person or entity which, directly or indirectly, conducts a business enterprise, activity or line of business which competes with any enterprise, activity or line of business in which the Company or its affiliates engage or any services provided by the Company or its affiliates; (ii) the term "Client" means the Company's clients, customers, and client or customer leads or those of the Company's affiliates, and shall include not only the actual person, firm, corporation, venture or other entity that is the named Client of the Company or its affiliates, but any related person, firm, corporation, venture or other entity, including, but not limited to the estate of such Client, a trust created by such Client, any partnership or corporation wherein such Client is a member, a partner or a more than ten percent (10%) shareholder, or any joint venture in which such Client is a participant; and (iii) the term "Restricted Area" shall mean the states in which Employee provided any services on behalf of the Company, or as to which Employee had access to Confidential Information regarding the Company's business during the last two years of Employee's employment with the Company or such shorter time as Employee has been employed.

(c)      Loyal Service.   Employee agrees that during the term of Employee's employment with the Company, Employee shall devote Employee's full working time and best efforts to the Company's business and will work solely for it and will not consult, work or perform services for any other person, firm, company, entity, or enterprise without the prior written consent of the Company.   Employee agrees to comply with all applicable laws, as well as all Company rules, policies, and procedures adopted from time to time.

(d)      Covenants Regarding Competition.   At all times during the term of Employee's employment with the Company and for a period of one (1) year immediately following the date on which Employee ceases rendering services in any capacity to the Company for any reason (the "Non-Compete Period"), Employee

shall not - directly or indirectly, and whether as a stockholder, venturer, partner, member, proprietor, principal, employee, agent, consultant or otherwise – own a Competitive Entity in the Restricted Area, or engage in or be employed or retained by a Competitive Entity in the Restricted Area in any position or role that would involve services, or the supervision of services, that are similar in function or purpose to those Employee performed on behalf of the Company.

(e)      Covenants Regarding Clients.   At all times during the term of Employee's employment with the Company and for a period of one (1) year immediately following the date on which that employment ceases for any reason, Employee shall not, directly or indirectly, alone or in concert with or on behalf of others, (i) solicit, encourage, influence or induce, or attempt to solicit, encourage, influence or induce, any Client that does business with the Company and with whom Employee had business-related contact, or regarding whom Employee had access to Proprietary Information, while employed by the Company, to cease doing business with the Company or its affiliates or to begin doing business with a Competitive Entity, (ii) contact any such Client for any such purposes, or (iii) otherwise interfere with any relationship between the Company or its affiliates and any such Client.

(f)      Covenants Regarding Other Employees.   At all times during the term of Employee's employment with the Company, and for a period of one (1) year immediately following the date on which Employee ceases rendering services in any capacity to the Company for any reason, Employee shall not, directly or indirectly, alone or in concert with or on behalf of others, (i) solicit, encourage, influence, interview, recruit or induce, or attempt to solicit, encourage, influence, interview, recruit or induce any other employee of the Company or its affiliates (the "Other Employees"), to cease working for the Company or its affiliates or to begin employment with another employer or entity, (ii) contact any Other Employee for any of such purposes, (iii) otherwise interfere with the employment of any Other Employee, or (iv) hire or offer employment to, or otherwise retain or engage, any Other Employee.

(g)      Time Periods Extended for Breach.   The foregoing time frames shall be increased by the period of time beginning from the commencement of any violation of the foregoing provisions until such time as Employee has cured such violation.

(h)      Reasonableness of Restrictions, Hardship and Inevitable Disclosure.   Employee hereby acknowledges and agrees that (i) the provisions of Section 4 (collectively, the "Covenants") are intended to supplement, and to further reinforce Employee's obligations with respect to the Proprietary Information and are ancillary to an otherwise enforceable agreement; (ii) the Covenants are fair, reasonable, and not unduly restrictive, (iii) the Covenants are supported by independent valuable consideration, as described in Section 4(a), to be provided to Employee by the Company; and (iv) because, among other things, (v) the Company is engaged in a highly competitive industry and Employee has unique access to, and will continue to have access to, Proprietary Information, (vi) the Company has made and will continue to make substantial investments to develop its business interests and goodwill, (vii) such investments are worthy of protection, and (viii) the Company's need for the protection afforded by the

Covenants is greater than any hardship Employee might experience by complying with their terms, the Covenants contain reasonable limitations as to time, geographic scope, and scope of activity to be restrained that do not impose a greater restraint than is necessary to protect the goodwill and other legitimate business interests of the Company and the Proprietary Information. Employee further acknowledges and agrees that disclosure of Proprietary Information would be inevitable should Employee seek or attempt to engage in activities of the type restricted or prohibited pursuant to the Covenants.

The parties agree, and do hereby acknowledge, that the restrictions in the Covenants are a materially significant and essential aspect of the Company's decision to hire and/or retain Employee as an employee and to provide Employee with access to Proprietary Information, and that the provisions contained in the Covenants have substantial value to the Company.

5.    **Employment at Will.** I agree that this Agreement is not an employment contract for any particular term. I have the right to resign and the Company has the right to terminate my employment at will, at any time, for any or no reason, with or without cause, and with or without notice. This Agreement constitutes the entire agreement between the parties relating to the subject matter hereof, and supersedes all prior agreements and understandings, whether oral or written, with respect to same, with the exception of (1) any confidentiality obligations I have by virtue of any prior agreement, policy, common law, or statute; and (2) any restrictive covenants I have agreed to in connection with my employment with the Company. This Agreement can only be changed by a subsequent written agreement signed by the Chief Executive Officer or President of the Company, or an authorized designee.

6.    **Survival.** I agree that any change or changes in my employment title, duties, compensation or equity interest after the signing of this Agreement shall not affect the validity or scope of this Agreement. I agree that my obligations under Sections 2 and 3 of this Agreement shall continue in effect after termination of my employment, regardless of the reason, and whether such termination is voluntary or involuntary, and that the Company is entitled to communicate my obligations under this Agreement to any of my potential or future employers.   I will provide a copy of this Agreement to any potential or future employers of mine, so

that they are aware of my obligations hereunder. My obligations under Sections 2 and 3 also shall be binding upon my heirs, executors, assigns and administrators, and shall inure to the benefit of the Company, its Affiliates, successors and assigns. This Agreement may be freely assigned by the Company to any third party.

7.    **Notification to New Employer.** In the event that I leave the employ of the Company, I hereby consent to the notification of my new employer of my rights and obligations under this Agreement.

8.    **Choice of Law and Jurisdiction.** Any dispute in the meaning, effect or validity of this Agreement shall be resolved in accordance with the laws of the State of New York without regard to the conflict of laws provisions thereof. Any legal action or proceeding relating to this Agreement shall be brought exclusively in the state or federal courts located in New York County, New York, and each party consents to the jurisdiction thereof.

9.    **No Waiver.** The failure of either party to enforce its rights under this Agreement at any time for any period shall not be construed as a waiver of such rights. Unless expressly provided otherwise, each right and remedy in this Agreement is in addition to any other right or remedy, at law or in equity, and the exercise of one right or remedy will not be deemed a waiver of any other right or remedy.

10.    **Severability.** If one or more provisions of this Agreement are held to be illegal or unenforceable under applicable law, such illegal or unenforceable portion shall be limited or excluded from this Agreement to the minimum extent required so that this Agreement shall otherwise remain in full force and effect and enforceable.

11.    **Remedies.** I acknowledge and agree that any breach or threatened breach of this Agreement will cause irreparable harm to the Company for which damages would not be an adequate remedy, and, therefore, the Company is entitled to injunctive relief with respect thereto (without the necessity of posting any bond) in addition to any other remedies.

*[Signature Page Follows]*

4

I HAVE READ THIS AGREEMENT CAREFULLY AND I UNDERSTAND AND ACCEPT THE OBLIGATIONS THAT IT IMPOSES UPON ME WITHOUT RESERVATION. NO PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME TO INDUCE ME TO SIGN THIS AGREEMENT. I SIGN THIS AGREEMENT VOLUNTARILY AND FREELY, WITH THE UNDERSTANDING THAT I EITHER (1) HAVE RETAINED A COPY OF THIS AGREEMENT OR (2) MAY, AT ANY TIME, REQUEST A COPY OF THIS AGREEMENT FROM THE COMPANY.

COMPANY

By: _____

Name: MATTHEW STRAZNITSKAS

Title: CHIEF EXECUTIVE OFFICER

EMPLOYEE

By: _____
Samuel E. Rothman (Sep 8, 2017)

Name: Samuel E. Rothman

Date: Sep 8, 2017

**Appendix A**

**Prior Inventions**

The following is a complete list of all inventions or improvements relevant to the subject matter of my employment by NAMELY, INC.  (the "**Company**") that have been made or conceived or first reduced to practice by me alone or jointly with others prior to my engagement by the Company:

◉ No inventions or improvements.

◯ The following inventions or improvements:

| Invention Title | Invention Date | Identifying Number or Brief Description |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

☐ Additional sheets attached.

_Samuel E. Rothman (Sep 8, 2017)_

**Employee Signature**

Sep 8, 2017

**Date**